UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STEPHANIE FLORES, an individual<br><br>Plaintiff,<br><br>v.<br><br>CBEYOND, INC., a Delaware Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV11-7883-R (CWx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant Cbeyond Communications, LLC's ("Defendant") motion for summary judgment or, in the alternative, partial summary judgment against plaintiff Stephanie Flores ("Plaintiff") came on scheduled notice for hearing on May 21, 2012, at 10:00 a.m., before the Honorable Manuel L. Real in Courtroom 8 of the United States District Court, Central District of California, Western Division, located at 312 North Spring Street, Los Angeles, California 90012.

Ellen E. Cohen and Jennifer A. Lipski of Law Offices of Joseph M. Lovretovich appeared on behalf of Plaintiff. Steven M. Kroll of Bent Caryl & Kroll LLP appeared on behalf of Defendant.

At the hearing, this Court GRANTED Defendant's motion for summary judgment against Plaintiff for the reasons as stated on the record.  Based on this Court's order, the following is the Statement of Uncontroverted Facts and Conclusions of Law in this action:

## UNCONTROVERTED FACTS

1.      Defendant Cbeyond Communications, LLC ("Cbeyond") is a telecommunications company that provides managed voice, mobile, and broadband services to its clients.  [Declaration of Geneva Gross ("Gross Decl."), ¶ 6; Declaration of Pamela White ("White Decl."), ¶ 5.]

2.      Cbeyond serves a number of metropolitan markets across the country, including the greater Los Angeles area.  [Gross Decl., ¶ 6; White Decl., ¶ 5.]

3.      Flores is a former employee of Cbeyond.  [Deposition Transcript of Plaintiff Stephanie Flores ("Flores Depo."), p. 131:20-21; Gross Decl., ¶ 10; White Decl., ¶ 10.]

4.      On August 14, 2006, Cbeyond hired Flores as a Service Coordinator. [Flores Depo., p. 43:17-44:9.]

5.      Flores' employment with Cbeyond was at will.  [Flores Depo., p. 165:10-12.]

6.      Flores worked at Cbeyond's Los Angeles branch office.   [Flores Depo., p. 43:17-18; Gross Decl., ¶ 10.]

7.      Regional Operations Director Geneva Gross was Flores' supervisor from May 2007 through the termination of her employment. [Gross Decl., ¶ 10.]

8.      As a Service Coordinator, Flores' job duties and responsibilities generally included performing installations and activations of services for customers.  [Flores Depo., p. 44:10-15.]

9.      Flores was able to perform all of job duties without any issues or troubles, except for project management. [Flores Depo., pp. 45:15-53:4.]

10.     Flores had issues or troubles performing project management because the workload was "too heavy" and information was not related correctly or efficiently to her when another person, lead Service Coordinator Cynthia Clemmons, worked on her orders. [Flores Depo., pp. 46:23-47:13, pp. 52:4-56:4.]

11.     Flores believed the workload was heavy because "[t]here was a lot of work to do" and her department was not "fully staffed for that amount of work." [Flores Depo., p. 60:6-19.]

12.     Flores believed the workload was too heavy towards the end of 2007 up to her termination date.  [Flores Depo., p. 63:5-20.]

13.     The workload increased because sales increased towards the end of 2007 up to Flores' termination date.  [Flores Depo., p. 63:5-20.]

14.     On July 19, 2007, Gross gave a verbal counseling session to Flores for poor job performance.  [Gross Decl., ¶ 12; Exhibit 1; Flores Depo., pp. 83:25-84:25, p. 86:20-22.]

15.     As of July 19, 2007, Flores was not communicating with customers, vendors, installers, and internal employees in a timely manner.  [Gross Decl., ¶ 12; Exhibit 1; Flores Depo., p. 86:20-22.]

16.     Gross warned Flores that continued performance deficiencies would result in further disciplinary action.  [Gross Decl., ¶ 12; Flores Depo., p. 86:20-22.]

17.     On October 10, 2008, Gross issued a written warning and performance improvement plan ("PIP") to Flores for continued poor job performance.  [Gross Decl., ¶ 13; Exhibit 1; Flores Depo., pp. 83:25-84:25, pp. 85:10-86:9, p. 87:1-8.]

18.     As of October 10, 2008, Flores was not communicating with customers, vendors, installers, and internal employees in a timely manner.  [Gross Decl., ¶ 13; Exhibit 1; Flores Depo., pp. 85:10-86:9, p. 87:1-8.]

19.     Under this PIP, Flores was required to: (1) follow up with customers in a timely manner; (2) follow up with vendors in a timely manner; and (3) follow up

- 3 -

with internal customers in a timely manner.  [Gross Decl., ¶ 13; Exhibit 1; Flores Depo., pp. 85:10-86:9, p. 87:1-8.]

20.    Under this PIP, Flores was warned that if there was "not immediate and sustained improvement, further disciplinary action up to and including termination will result at any time." [Gross Decl., ¶ 13; Exhibit 1; Flores Depo., pp. 90:21-91:4, pp. 122:2-123:4.]

21.    On October 15, 2008, Flores requested a leave of absence for a serious health condition under the Federal Medical Leave Act ("FMLA") and California Family Rights Act ("CFRA"). [White Decl., ¶ 11; Exhibit 3; Gross Decl., ¶ 14; Flores Depo., pp. 64:23-65:8, 100:4-12, 170:10-171:25.]

22.    Flores was suffering from workplace stress.  [Flores Depo., pp. 65:12-66:3.]

23.    Flores had workplace stress because of her "[w]orkload, long hours, working from home and also on weekends."  [Flores Depo., p. 66:4-10.]

24.    On October 30, 2008, Cbeyond granted Flores' request for a leave of absence under the FMLA and CFRA.  [White Decl., ¶ 12; Exhibit 4; Flores Depo., pp. 73:23-74:1, p. 177:1-18.]

25.    Flores' leave was granted from October 13, 2008 through November 30, 2008.  [White Decl., ¶ 12; Exhibit 4; Flores Depo., pp. 73:23-74:1, p. 177:1-18.]

26.    Flores was expected to return to work on December 1, 2008.  [White Decl., ¶ 12; Exhibit 4; Flores Depo., p. 177:1-18.]

27.    On November 26, 2008, Flores requested an extension of her leave of absence until January 4, 2009.   [White Decl., ¶ 13; Exhibit 6; Flores Depo., pp. 181:17-182:4.]

28.    Cbeyond granted Flores' request for an extension of her leave of absence until January 4, 2009.   [White Decl., ¶ 13; Exhibit 6; Flores Depo., pp. 183:12-184:2.]

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW

29.     Flores was expected to return to work on January 5, 2009. [White Decl., ¶ 13; Exhibit 6; Flores Depo., pp. 183:12-184:2.]

30.     January 5, 2009, Flores returned to work without any restrictions. [White Decl., ¶ 14; Exhibit 7; Gross Decl., ¶ 14; Flores Depo., p. 65:5-11.]

31.     Flores' treating physician, Mario Diaz-Gomez, M.D., fully released Flores to return to work.  [White Decl., ¶ 14; Exhibit 7; Flores Depo., p. 65:5-11.]

32.     Diaz-Gomez certified that Flores was able to perform all of the essential functions of his or her position and may return to employment in that or a similar position.     [White Decl., ¶ 14; Exhibit 7; Flores Depo., p. 65:5-11.]

33.     Flores did not request or have any work restrictions during her employment with Cbeyond. [Flores Depo., p. 83:19-24.]

34.     Upon her return to work, Flores did not have any workplace stress. [Flores Depo., p. 66:11-14.]

35.     Flores' workplace stress returned between approximately June and August 2009.  [Flores Depo., pp. 66:11-67:14.]

36.     Flores' stress returned "[b]ecause of the long hours" and "[b]eing threatened to be replaced if work wasn't completed." [Flores Depo., pp. 66:20-67:3.]

37.     Flores' stress continued to increase until the end of employment "[b]ecause of the workload" and "[c]onstant threats to be replaced, terminated" from Gross. [Flores Depo., pp. 67:21-68:20.]

38.     On July 13, 2009, Gross gave a second verbal counseling session to Flores for poor job performance. [Gross Decl., ¶ 15; Exhibit 8; Flores Depo., pp. 83:25-84:25, p. 104:14-16.]

39.     As of July 13, 2009, Flores was not communicating with customers, vendors, installers, and internal employees in a timely manner.  [Gross Decl., ¶ 15; Flores Depo., p. 104:14-16.]

Bent Caryl &
Kroll, LLP
Attorneys At Law

40.     On November 11, 2009, Gross issued a second PIP to Flores for continued poor job performance.  [Gross Decl., ¶ 16; Exhibit 8; Flores Depo., pp. 83:25-84:25, p. 102:22-103:20.]

41.     As of November 11, 2009, Flores was not communicating with customers, vendors, installers, and internal customers or employees in a timely manner.  [Gross Decl., ¶ 16; Exhibit 8; Flores Depo., pp. 102:22-103:20.]

42.     Under this second PIP, Flores was required to: (1) follow up with customers within 24 hours; (2) follow up with vendors within 24 hours; (3) follow up with internal customers in a timely manner; (4) meet all scorecard metrics for November 2009; (5) reschedule accounts according to process to eliminate aborted truck rolls; and (6) schedule both customers and vendors no less than 1 week in advance for the set activation date.  [Gross Decl., ¶ 16; Exhibit 8; Flores Depo., pp. 102:22-103:20.]

43.     Under this second PIP, Flores was warned that if there was "not immediate and sustained improvement, further disciplinary action up to and including termination will result at any time."  [Gross Decl., ¶ 16; Exhibit 8; Flores Depo., pp. 120:15-121:23.]

44.     On January 7, 2010 (Thursday), Flores was absent from work because of a stress rash.  [Flores Depo., pp. 262:7-10, pp. 262:21-263:6.]

45.     While Flores was absent on January 7, 2010, Gross determined Flores was not upholding the requirements as outlined in her PIP dated November 11, 2009.  [Gross Decl., ¶ 17; Flores Depo., pp. 254:4-256:23.]

46.     As of January 7, 2010, Flores still was not communicating with customers, vendors, installers, and internal employees in a timely manner.  [Gross Decl., ¶ 17; Exhibit 8; Flores Depo., pp. 254:4-256:23.]

47.     During the week of January 4, 2010 alone, Flores failed to properly handle four separate accounts.  [Gross Decl., ¶ 17; Exhibit 8; Flores Depo., pp.

- 6 -

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW

254:4-256:23.]

48.     Later that day on January 7, 2010, Gross made the decision to terminate Flores' employment for continued poor job performance.  [Gross Decl., ¶¶, 17-19; Exhibit 9; Flores Depo., pp.  204:8-22, pp. 254:4-256:23; Supplemental Declaration of Steven Kroll ("Supp. Kroll Decl."), ¶ 5-7; Exhibits 12 & 13 (RFA Nos. 1, 9-12); Pl.'s Exhibits 21-25.]

49.     On January 8, 2010 (Friday), Flores was also absent from work because of her stress rash.  [Flores Depo., pp. 262:7-10, pp. 262:21-263:6.]

50.     Flores was supposed to see her doctor on January 8, 2010, but her doctor continued her appointment to the next day, January 9, 2010.  [Flores Depo., p. 263:7-12.]

51.     Flores eventually saw her doctor on January 9, 2010 (Saturday).  [Flores Depo., p. 263:4-17.]

52.     On January 11, 2010 (Monday), Flores returned to work without any restrictions.  [Flores Depo., pp. 197:25-198:1, pp. 279:24-282:18; Exhibit 11.]

53.     On January 11, 2010, Flores did not request a leave of absence, nor did she intend to take a leave of absence.  [Flores Depo., p. 200:1-10, 206:3-206:11.]

54.     On January 11, 2010, Flores returned to work to keep working because she "really enjoyed her job."  [Flores Depo., p. 199:20-25.]

55.     Upon Flores' arrival to the office on January 11, 2010, Gross and HR Business Manager Yvette Hofsaess met with Flores.  [Gross Decl., ¶ 20; Flores Depo., pp. 125:22-24; pp. 196:16-197:3; p. 233:2-5.]

56.     During the meeting, Gross informed Flores that her work performance had not improved since her second PIP and that she did not meet the requirements of a service coordinator.  [Gross Decl., ¶ 20; Flores Depo., pp. 125:22-24; pp. 196:16-197:3; p. 198:16-23, p. 233:2-5.]

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW

57.   On January 11, 2010, Cbeyond terminated Flores' employment, effective immediately.  [Gross Decl., ¶ 20; Exhibit 10; Flores Depo., pp. 196:16-197:3, pp. 203:11-204:19, p. 143:4-10; Supp. Kroll Decl., ¶ 5-7; Exhibits 12 & 13 (RFA Nos. 1, 9-12); Pl.'s Exhibits 21-25.]

Based on the foregoing Uncontroverted Facts, the following Conclusions of Law are hereby made:

## CONCLUSIONS OF LAW

1.   Flores was employed by Cbeyond.

2.   Cbeyond terminated Flores' employment.

3.   Flores cannot establish a prima facie claim for wrongful termination in violation of public policy for a stress disability theory under the California Fair Employment and Housing Act (FEHA).

4.   Flores cannot establish she was otherwise qualified to do her job.

5.   Flores cannot establish Cbeyond terminated her employment because of her alleged stress disability.

6.   Flores cannot establish a prima facie claim for wrongful termination in violation of public policy for a need to take medical leave theory under the California Family Rights Act (CFRA) or FEHA.

7.   Flores did not exercise her right to take leave for a qualifying CFRA purpose.

8.   Flores cannot establish a causal connection between her alleged need to take a medical leave and the termination of her employment.

9.   Cbeyond terminated Flores for legitimate business reasons.

10.   Flores cannot show the legitimate business reasons for her termination were a pretext for wrongful termination.

11.   Judgment should be entered in Cbeyond's favor forthwith.

BENT CARYL &
KROLL, LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Therefore, the Court has considered the pleadings and files in this action, all of the papers and documents filed on behalf of each of the parties herein, and the oral arguments presented at the hearing of the motion.  Satisfactory proof having been made, and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there is no triable issue of fact with respect to any of the issues upon which the instant motion is based, that Defendant is entitled to summary judgment as a matter of law.

IT IS SO ORDERED.


Dated:        __June 11, 2012__        _____

U.S. DISTRICT COURT JUDGE

**PROOF OF SERVICE**

I, Darryl M. Jones, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 6300 Wilshire Boulevard, Suite 1415, Los Angeles, California 90048. On May 29, 2012, I served a copy of the within document(s):

**[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

    X       by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

Joseph M. Lovretovich, Esq.
Ellen E. Cohen, Esq.
Jennifer A. Lipski, Esq.
Law Offices of Joseph M. Lovretovich
5941 Variel Avenue
Woodland Hills, California 91367
Telephone: (818) 610-8800
Facsimile: (818) 610-3030
*Attorneys for Plaintiff Stephanie Flores*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on May 29, 2012, at Los Angeles, California.

_____
Darryl M. Jones